IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,                )
                                         )
          Plaintiff,                     )
                                         )      Cr. No.: 25-0879-JB
     vs.                                 )
                                         )
**HERIBERTO SALAZAR-AMAYA**, **et al**.,)
                                         )
          Defendants.                    )

**UNITED STATES' MOTION IN LIMINE TO ADMIT
REFERENCE TO DEFENDANT'S STATUS AS AN INDIVIDUAL ON
PRE-SENTENCE RELEASE IN A FEDERAL CASE AND AS A PRISONER**

The United States files its motion *in limine* in anticipation of trial, and respectfully moves this Court to admit references to the Defendant's status on release conditions pending sentencing for a federal crime while committing the charged offense (hereinafter, "pre-sentence release"). Further, the United States requests this Court admit references to the Defendant's status as a prisoner for the purposes of admission of Rule 404(b) evidence where the Defendant conspired with others to introduce and distribute illegal narcotics in the jail facility. Further, since his arrest, the Defendant had engaged in discussions about his own acts of distribution of contraband (narcotics) inside a jail facility. The United States will file a separate Notice pursuant to Rule 404(b) to more fully address these other crimes, wrongs or acts that overlay the events of the instant case.

While on pre-sentence release, and even prior to entering his guilty plea, the Defendant conversed with co-defendants via text message and lawfully intercepted phone calls. Following the arrest of a co-defendant, the Defendant received recorded calls placed from a jail facility. These calls discussed the introduction of contraband (narcotics) into the jail by the two speakers. Since

his arrest, the Defendant has placed recorded calls while he has been in custody. Many of these communications are inseparable from the evidence in the government's its case-in-chief. The remaining communications reveal the Defendant's other crimes, wrongs or acts that occurred while the Defendant was on pre-sentence release. Those other crimes, wrongs or acts continued after the Defendant's arrest, and those acts are also inseparable from his status as a prisoner as they demonstrate his continued criminal conduct; distributing contraband (narcotics) while incarcerated.

For context, the United States submits:

1. On March 21, 2021, the Defendant was indicted in District of New Mexico Cause No. 21-CR-310 DHU, for being a felon in possession of a firearm.  Doc. 19, Cause No. 21-CR-310 DHU.[1]

2. On June 21, 2021, the Defendant's release conditions were modified to allow him to reside with A.A., his girlfriend. Doc.32, Cause No. 21-CR-310 DHU.

3. Beginning in June 2024, the United States had discovered text exchanged between the Defendant and co-defendant Sedillo, discussing the parties' drug trafficking activities.[2]

4. On October 24, 2024, the Defendant pled guilty to being a felon in possession of a firearm. Doc. 84, Cause No. 21-CR-310 DHU.

5. On October 21, 2024, this Court authorized the interception of wire communications over Sedillo Telephone 1, Garcia Telephone 1 and Montoya Telephone 1.  24-MR-2014.

---

1 The Defendant was on state probation at the time of this offense and was under a criminal justice sentence for another crime.
2 Co-defendant Sedillo was arrested on or about November 13, 2024, and a phone extraction was conducted well after his arrest. It is through this extraction that the text exchanges were discovered.

6. On October 30, 2024, the Honorable David Herrera Urias authorized the interception of wire communications over telephone number HSA Phone 3 and interception of wire and electronic communications over the telephone numbers HSA Phone 6 and HSA Phone 7. 24-MR-1956.

7. The Defendant was intercepted over various lines listed above discussing his drug trafficking activities and his co-defendant's drug trafficking activities in this case, as well as his culpability in the felon-in-possession case.

8. Following the arrest of co-defendant Sedillo, the Defendant is intercepted receiving recorded calls from jail where he, his co-defendant, and other third parties discuss smuggling contraband (narcotics) into the jail for resale to other inmates.

9. On May 2, 2025, the Defendant was arrested in the instant matter. *See* Doc. 91. Since that time, he has made recorded calls from jail to others to further his illicit activities and has offered suboxone to other inmates.

## I.  DISCUSSION

The charges against Defendant in the instant case arise from his conduct during his pre-sentence release for another federal crime, when he engaged in a continuing criminal enterprise and conspired with co-defendants to distribute and possess with intent to distribute illegal narcotics, and aiding and abetting.  There is simply no way for this evidence to be presented without reference to Defendant's status as an individual on pre-sentence release, as the United States Probation Department (USPO) witness, will identify the Defendant. Further, the USPO is familiar with the Defendant's voice based upon contact with the Defendant using a telephone number the Defendant himself provided.  Said telephone number was intercepted over separate

wire intercepts. Further, the USPO provided Defendant's telephone number to members of law enforcement in order to locate him for arrest.

In addition, Defendant was engaging in criminal conduct outside of the duration of the charged conspiracy, both when he was on pre-sentence release, and during his period of incarceration since his arrest for the instant offense. Since the arrest of co-defendant Sedillo, the Defendant has talked with other co-defendants, other inmates, and via jail telephone to continue his illegal conduct.  Not only was he trafficking illegal narcotics while on pre-sentence release conditions, but he also conspired to smuggle contraband (narcotics) into the jail. Apparently he was successful because he has since offered suboxone for sale to other inmates. The Government moves the Court to allow such references.

The Tenth Circuit has approved evidence of criminal confinement or other prejudicial evidence where it serves to provide necessary context.  *See, e.g., United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010).  In *Ford*, the Tenth Circuit considered a challenge to evidence of a prison escape.  613 F.3d at 1266.  Although the charges at issue involved firearms possession, the Court nonetheless found that because the defendant's escape from prison "could not be separated from the charged crimes," it "undoubtedly" constituted permissible *res gestae* evidence.  *Id.* at 1268.  The Court further rejected the defendant's argument against exclusion under Fed. R. Evid. 403, because the Government needed to show he was a fugitive and the escape "was closely related to [his] guilt."  *Id.*

Here, the Defendant's conduct charged in the second superseding indictment occurred while he was on pre-sentence conditions of release for another federal crime. The Defendant's other bad acts occurred before the conspiracy date alleged in the superseding indictment, before

4

his guilty plea in his other federal case, during the conspiracy dates alleged, and while he was being held for both federal matters. In short, the Defendant's criminal conduct was continuous. As in *Ford*, the prison context cannot be separated from the charged crimes. Moreover, his status as being on pre-sentence release, and as a prisoner risks far less prejudice than the escape at issue in *Ford*. It also risks far less prejudice than admission of evidence of child molestation, evocative testimony about the victims of the Oklahoma City bombing, and evidence of murder, all of which the Tenth Circuit has approved as admissible *res gestae* evidence. *See United States v. Piette*, 45 F.4th 1142, 1155-56 (10th Cir. 2022) (admitting evidence of "simultaneous domestic molestation" of defendant's daughters because it was "difficult to separate" from the molestation of the alleged victim and because its prejudicial effect did not substantially outweigh its probative value); *United States v. McVeigh*, 153 F.3d 1166, 1201-02 (10th Cir. 1998); *cf. Cummings v. Simmons*, 506 F.3d 1211, 1239 (10th Cir. 2007) (rejecting misjoinder claim because the murder of one victim was part of the *res gestae* of a second murder). Even <u>extrinsic</u> evidence of significantly higher prejudicial risk than Defendant's prisoner status has been approved. *See, e.g., United States v. Simpson*, 152 F.3d 1241, 1248-49 (10th Cir. 1998) (uncharged child pornography properly admitted under Fed. R. Evid. 404(b)).

Moreover, pertinent here, the Tenth Circuit has upheld testimony about a defendant's violent assault on two babysitters where it provided context to his admission to the charged crimes. *See United States v. Sarracino*, 131 F.3d 943, 949 (10th Cir. 1997) (applying the context principle to the "once-removed situation" of an admission rather than the charged crime under Rule 404(b)). Specifically, the defendant made the admission after tying up the babysitters and hitting them with a rifle and the butt of a knife. *Id.* at 946. Here, Defendant makes statements to co-conspirators

about his involvement in uncharged conduct. Those statements were captured via text message. The Defendant makes statements about the charged offenses while he is on pre-sentence release. Those statements were intercepted via Title III wiretap intercepts. After the arrest of a co-defendant, the Defendant discusses bringing contraband into the jail through a third party.  This is also while he was on pre-sentence release.  Finally, once arrested, the Defendant discusses ongoing criminal conduct trafficking contraband within the jail with inmates and via recorded telephone calls while in custody. The recorded calls identify the Defendant as an inmate at a specific jail facility, and also provide notice that the calls are recorded. In this case, the mere context of pre-sentence release conditions for another federal case, and pre-trial confinement at issue here poses far less prejudicial risk than the armed attack at issue in *Sarracino*.

As noted above, the Government also intends to admit calls that are recorded placed from the jail, both while the Defendant was on pre-sentence release as the recipient, and while he was being held for the instant offense.  The probative value of the calls is substantial.  Not only do they dispel any contention that the Defendant was not involved in the instant case, but they also demonstrate the Defendant continues to engage in similar conduct. The Government must prove the Defendant's knowledge, intent, and absence of mistake at trial.  Regarding the calls made from the jail to and from the Defendant, the Government can admit these statements without reference to the fact that they were sent from jail if the Defendant will stipulate to their authenticity. Otherwise, the Government moves the Court for permission to introduce them through the case agent coupled with a Certificate of Authenticity from Talton Communications, the company who maintains these recordings in the ordinary course of business.

## II. <u>NOTICE TO OPPOSING COUNSEL</u>

Based on the nature of the Motion opposition, is presumed.

## III. <u>CONCLUSION</u>

For all the above reasons, the United States respectfully requests that this Court grant its

Motion *in Limine* to admit reference to Defendant's status as an individual on pre-sentence

release for another federal offense, and as a prisoner after his arrest for the instant offense.

Respectfully submitted,

RYAN ELLISON
United States Attorney

/s/ *Elaine Y. Ramirez*
MATTHEW McGINLEY
RAQUEL RUIZ-VELEZ
BLAKE NICHOLS
ELAINE Y. RAMÍREZ
Assistant United States Attorneys
Post Office Box 607
Albuquerque, New Mexico 87102
(505) 346-7274

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2025, I filed the foregoing document electronically through the CM/ECF system. Pursuant to the CM/ECF Administrative Procedures Manual, §§ 1(a), 7(b)(2), such filing is the equivalent of service on parties of record.

/s/ *Elaine Y. Ramírez*
ELAINE Y. RAMÍREZ
Assistant United States Attorney