IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,                                               Cr. No. 25-00879 JB

v.

HERIBERTO SALAZAR AMAYA, ET AL.,

    Defendants.

## DEFENDANT BRIAN SANCHEZ'S SENTENCING MEMORANDUM AND REQUEST FOR VARIANT SENTENCE

Defendant Brian Sanchez ("Sanchez") is set for sentencing on February 18, 2026, having pled guilty to three crimes, all of which stem from two occasions in July and September 2024 on which he sold (or arranged sales of) fentanyl to an undercover DEA agent. Sanchez did not commit these offenses for pecuniary gain, or to climb the ladder within a larger drug trafficking organization. Instead, he arranged these sales of fentanyl only to support his own addiction—an addiction for which he voluntarily sought treatment in September 2024.

Since his guilty plea in May 2025, Sanchez has been residing at the La Pasada Halfway House. During this time, he has secured and retained gainful employment and been otherwise fully compliant with his conditions of release. For these reasons, and others described more fully below, Sanchez respectfully requests the Court to impose a sentence of time served along with a period of home confinement and probation. While such a sentence reflects a variance from the advisory guideline range, the requested variance is amply supported by the applicable sentencing factors reflected in 18 U.S.C. § 3553(a).

I. **Factual Background**

Sanchez is a 38-year-old man with no prior criminal history points. Sanchez has lived in Albuquerque for most of his adult life. As noted above the substantive offenses in this case consist of two instances in which Sanchez arranged and conducted sales of fentanyl. While otherwise unremarkable, these transactions earned Sanchez a designation as a co-conspirator in a sprawling criminal case. But Sanchez is not an entrepreneur in the drug trade. Instead, Sanchez arranged these transactions for the sole purpose of supporting his own fentanyl addiction. The PSR makes this abundantly clear when it recites that shortly after the July 2024 transaction, Sanchez called the buyer (later revealed as an undercover DEA agent) and pleaded to be provided 100 fentanyl pills for arranging the transaction.

In September 2024, concerned for his own well-being and that his addiction would be discovered by friends and family, Sanchez voluntarily checked himself into a rehabilitation program and apparently overcame his addiction. *Id.* ¶ 64. But his past caught up with him anyway. In April 2025, a grand jury indicted Sanchez (along with approximately 18 other defendants), charging him with participation in a drug conspiracy, along with two counts of A-level distribution of fentanyl corresponding to the July and September 2024 transactions described above. Judge Molzen released Sanchez pending trial on the condition that he reside at the La Pasada Halfway House. Shortly thereafter, Sanchez pled guilty to all charges against him as contained in a superseding indictment, Doc. 293. Sanchez continues to reside at La Pasada pending his sentencing proceeding.

Since being released to Las Pasada, Sanchez has been compliant with all conditions of release. Although prohibited from resuming his prior career as a self-employed barber, Sanchez secured and has maintained employment at a local restaurant. PSR ¶¶ 67-69. He also maintains a

strong family support network including his grandfather, his uncle, his aunt, and his longtime partner.

## II.     Standards Applicable to Sentencing

Sentencing in a federal criminal case is a two-step process. First, this Court must determine the applicable guideline range as calculated under the United States Sentencing Guidelines. Second, the Court must make an individualized assessment of the factors reflected in 18 U.S.C. § 3553(a) to determine an appropriate sentence for the particular defendant. *See Nelson v. United States*, 555 U.S. 350, 351 (2009) ("the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors . . ."). After calculating the applicable guideline range and applying the now familiar sentencing factors reflected in 18 U.S.C. § 3553(a), the Court must impose a sentence that is "sufficient but not greater than necessary to comply with the purposes of punishment" as reflected in 18 U.S.C. § 3553(a)(2). Consideration of those factors suggests that a sentence of time served plus a period of home confinement is appropriate for Sanchez.

## III.     Analysis

### A.  Sanchez's History and Characteristics

Sanchez is a 38-year-old man with no criminal history. Since approximately 2023 Sanchez has been in a relationship with his longtime partner, Valerie Bonilla. PSR ¶ 58. Sanchez also has a 13-year-old daughter from a previous marriage, for whom he was the primary caretaker prior to his arrest. *Id.* ¶ 57. In 2022, Sanchez fell victim to a fentanyl addiction, which

slowly worsened to the point that he was ultimately taking 20 pills per day. *Id.* ¶ 64.[1] During this time, Sanchez kept his addiction a secret from those closest to him, including his longtime partner Ms. Bonilla. In September 2024, after Bonilla discovered Sanchez was using fentanyl, Sanchez voluntarily went to a methadone clinic to seek treatment for his addiction. *Id.* ¶ 64. Sanchez attended that clinic from September 2024 to May 2025 and successfully completed a course of treatment. *Id.* Sanchez has not used fentanyl since 2024. *Id.* Indeed, this Court's description of the defendant in *United States v. Valdez*, 77 F. Supp. 3d 1115 (D.N.M. 2014) is just as applicable to Mr. Sanchez. As this Court explained "Valdez has some redeeming personal characteristics and good qualities; he is able to work, has a good family, and has done some good in his life, but he has been overcome by addiction. Under § 3553(a)(1)'s directive to consider the 'characteristics of the defendant', this factor puts downward pressure on the sentence." *Id.* at 1142 (D.N.M. 2014).

Sanchez' prior addiction to fentanyl, and the role that addiction played in the offense are also salient characteristics to be considered under § 3553(a). As this Court, and others, have previously recognized, that Sanchez was driven to engage in this criminal conduct by his fentanyl addiction puts downward pressure on any sentence to be imposed. *See United States v. Valdez,* 77 F. Supp. 3d 1115, 1141 (D.N.M. 2014) (Browning, J.) ("Valdez' drug addiction thus puts downward pressure on the sentence, both under § 3553(a)(1)'s directive to consider the 'characteristics of the defendant,' and § 3553(a)(3) and (a)(2)(D)'s mandate to consider 'the kinds of sentences available' 'to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.'); *see also*

---

[1] The obvious link between Sanchez's addiction to fentanyl and his prior experience having been prescribed opioids cannot be ignored. *See* PSR ¶¶ 63-64. Indeed, prescription opioids have been widely recognized as laying a groundwork for future addiction whether to opioids themselves or to similar illegal drugs like fentanyl.

4

*United States v. Hendrickson*, 25 F. Supp. 3d 1166, 1174 (N.D. Iowa 2014) ("The answer, at least in most cases, is that addiction mitigates a defendant's culpability. By physically hijacking the brain, addiction diminishes the addict's capacity to evaluate and control his or her behaviors.").

      B.  *Nature and Circumstances of the Offense*

The offenses in question consist of two occasions on which Sanchez sold fentanyl to an undercover DEA agent, as well as Sanchez's participation in the overall drug conspiracy reflected in the indictment. Several aspects of the offense bear special consideration in fashioning an appropriate sentence.

First, while Sanchez was charged along with the many other defendants in this case as part of a criminal conspiracy, the PSR makes clear that he was not meaningfully associated with the larger drug trafficking organization at which this indictment is principally directed. *See* PSR ¶ 24. Rather, the PSR labels Sanchez as an "independent dealer" who "received no instruction or directive from the DTO." *Id.*[2] Indeed, the PSR reports that DEA the July 2024 transaction with which Sanchez is charged had occurred even before the principal investigation into the drug trafficking organization even started. *Id.* ¶ 16. In terms of ranking Sanchez within the larger conspiracy, the PSR described Sanchez as a "local distributor" and assigns Sanchez to the lowest rung of all charged defendants. *Id.* ¶ 15.

Second, it must be acknowledged that Sanchez was in fact little more than a broker or facilitator in the two transactions to which he has pled guilty. Sanchez knew of a supplier with access to the quantities of fentanyl requested by the supposed buyer. Sanchez connected those two parties and conducted the transaction. *Id.* ¶¶ 18-22. Sanchez did not independently supply

---

[2] As discussed more fully in Sanchez' objection to the PSR (Doc. 611), the fact that Sanchez was not directly affiliated with the drug trafficking organization does not preclude a role adjustment pursuant to USSG §3B1.2.

5

the drugs for purchase; nor did he set the prices for the drugs or dictate any other terms of the transactions. Rather he simply relayed information from the source of supply to the buyers and conducted the physical transfer of drugs and money. *See, e.g.,* PSR ¶ 21 ("Sanchez texted the UA and advised his SOS would not budge, indicating the price would not be lower than $1.20 per pill."); *see also United States v. Hernandez-Mejia*, No. CR 05-469 JB, 2008 U.S. Dist. LEXIS 108669, at *41 (D.N.M. Nov. 19, 2008) (Browning, J.) ("The evidence does not demonstrate that he had a significant role in setting resale prices of the drugs, or in providing instruction or guidance to those to whom he was selling."). Reflecting this reality, the PSR elsewhere accurately describes Sanchez as a "facilitator" rather than a dealer or supplied. *Id.* at p. 22. Such a role has regularly been recognized as among the least culpable roles in a drug conspiracy. *See United States v. Johnson*, 379 F. Supp. 3d 1213, 1228 (M.D. Ala. 2019 ("The 'courier' and 'broker' roles are the seventh and eighth lowest out of the Sentencing Commission's nine categories of "offender functions," which decrease in culpability.").

      Third, Sanchez engaged in these transactions with no motive or intention for profit or pecuniary gain. Instead, he arranged the transaction for the sole purpose of obtaining pills to support his addiction—a "commission" of sorts for arranging the transaction. This is best illustrated by the PSR's recitation of Sanchez's seemingly desperate telephone call to the purchaser after the September 9, 2024, transaction in which Sanchez requested 100 pills he had apparently been promised for facilitating the transaction. *See* PSR ¶ 23 ("While the UA was driving back to the DEA's office, he received a call from Sanchez who stated Young was supposed to give him 100 fentanyl pills for conducting the transaction, but she did not."). As this Court has recognized, drug transactions occasioned by addiction are necessarily less insidious than those motivated by a desire for profit. *See Valdez*, 77 F. Supp. 3d at 1146 n.16 (Browning,

6

J.) ("drug dealers commit their crimes to make a profit, a motive that is perhaps more insidious than feeding an addiction, and criminal-justice deterrence is more likely to dissuade a profit-motive crime than an addiction-fueled crime.").[3]

### C. Section 3553(a)(2) Factors Related to Purposes of Punishment

In fashioning an appropriate sentence this Court must also consider the purposes of punishment as set forth in Section 3553(a)(2), including the need for the sentence impose to promote respect for the law, provide just punishment and adequate deterrence. *See* 18 U.S.C. § 3553(a)(2). Sanchez submits that a sentence of time served and additional home confinement would adequately serve these purposes.

### A.  Additional Specific Deterrence is Largely Unnecessary.

As this is Sanchez's first significant experience in the criminal justice system, any sentence imposed is likely to have an outsized deterrent effect. *See United States v. Davis*, 2016 U.S. Dist. LEXIS 144899, at *7 (E.D. Ky. Oct. 13, 2016) ("The need to deter criminal conduct is not strong here as Defendant has a very minimal criminal history."); *cf. Valdez*, 77 F. Supp. 3d 1115, 1143 ("Section 3553(a)(2)(B)'s specific-deterrence requirement thus puts upward pressure on the sentence. Second, Valdez has spent over fourteen-and-a-half years of his life in various prison facilities, yet continues to engage in criminal acts.").

Indeed, Sanchez's experience in the federal criminal justice system to date has by itself provided a significant measure of deterrence. Even before any terms of incarceration is imposed, Sanchez has already experienced significant consequences for his actions. He has been unable to continue to his occupation as a barber, is separated from his family, and forced to reside at the

---

[3] As noted in Sanchez's Reply in Support of Objection to PSR, there is no evidence that Sanchez intended to, or did, obtain pecuniary gain from conducting these transactions.

Halfway House.[4] These experiences by themselves have taught Sanchez the immediate consequences of involvement in the drug trade. Moreover, because Sanchez's criminal conduct was undeniably a product of his addiction, which he has apparently overcome, additional deterrence is likely unnecessary. *See Valdez*, 77 F. Supp. 3d at 1146, n.16 (noting the crimes driven by addiction may require less deterrence than those driven by a profit motive).[5]

B.  *The Need to Protect the Public From Further Crimes by Sanchez*

Sanchez shows little danger of reoffending such that society would need protection against potential future offenses. As described above, Sanchez's offenses were occasioned by his drug addiction, which he successfully overcame even prior to his arrest on these charges. Moreover, even prior to his arrest Sanchez enjoyed many of the hallmarks of a successful and law-abiding life. He had a steady and profitable profession as a barber (PSR ¶¶ 68-70), he had (and still has) a stable relationship with Ms. Bonilla, and he was the principal caregiver for his daughter. Sanchez also benefits from a strong support network consisting of other friends and family members. All these resources remain available to support Sanchez after the conclusion of this case. Finally, Sanchez's behavior while on pre-trial release bears out his low risk of reoffending. Since being placed at La Pasada, Sanchez has been completely compliant with all conditions of release including willingly participating in counseling programs. *Id.* ¶¶ 10-12.

---

[4] If a defendant is detained pending trial any time spent in custody is counted against any custodial sentence ultimately imposed. 18 U.S.C. § 3585. No similar credit is provided for time spent in a halfway house. *See United States v. Woods*, 888 F.2d 653, 655 (10th Cir. 1989). Nonetheless, this Court may and should consider the fact that Sanchez has been residing at La Pasada for approximately nine months as of the present sentencing date. This has represented a significant restriction on his liberty, which this Court may consider when determining the need for any additional confinement.

[5] This Court has also recognized that sentencing in drug cases does little to dissuade others from committing similar offenses (*i.e.*, general deterrence). *See Valdez*, 77 F. Supp. 3d 1115, 1152 n.17 ("the harsh sentencing provisions embodied by mandatory minimums and the Guidelines have failed to successfully deter much crime, and the war on drugs' legacy has largely been one of incapacitation -- preventing criminal offenses by incarcerating offenders so that they cannot reoffend -- rather than general deterrence."). Given this (accurate) observation, general deterrence should not factor significantly into this Court's choice of sentence for Sanchez.

These factors suggest that the need to protect the public should not factor heavily into the Court's sentencing analysis.

        D.  *The Requested Sentence Would Not Create Unwarranted Sentencing Disparities.*

The PSR explains that the median sentence imposed upon a defendant facing sentencing under USSG §2D1.1 in a case involving fentanyl, at Offense Level 25 and Criminal History Category I was 42 months. PSR ¶ 97. This is already well below Sanchez's advisory guideline range of 57-71 months before any requested role adjustment under USSG §3B1.2.

Against these figures, a sentence of time served and home confinement would not create an unwarranted disparity. Indeed, the median sentence identified in the PSR does not account for the many other mitigating factors Sanchez presents, including his independent decision to seek treatment for his addiction and his record of perfect compliance while on release.

        E.  *The Requested Sentence Would be Sufficient to Promote Respect for the Law and Provide Just Punishment.*

As a sentencing factor, the need for the sentence imposed to promote respect for the law and provide just punishment is somewhat more amorphous than the other § 3553(a) factors. Nonetheless, this Court has tied that factor to the societal desire for retribution. *See United States v. Zapata-Trevino*, 378 F. Supp. 2d 1321, 1323 (D.N.M. 2005) (Browning, J.). Yet this Court has also recognized that this factor is driven largely by a defendant's criminal history and the length of prior sentences imposed on the same defendant. *See United States v. Corchado-Aguirre*, No. CR 15-0393 JB, 2015 U.S. Dist. LEXIS 176621, at *104 (D.N.M. Aug. 31, 2015) ("Because this is Corchado-Aguirre's fifth immigration offense, a longer sentence is necessary to promote respect for the law and to provide a just punishment."); *United States v. Urive-Gonzalez*, No. CR 09-3561 JB, 2010 U.S. Dist. LEXIS 98627, at *8 (D.N.M. Aug. 31, 2010) (Browning, J.) ("It is a

9

longer sentence that Urive-Gonzalez previously served for of cocaine and DWI. A sentence of 12 months and 1 day promotes respect for the law and reflects the seriousness of the offense.").

Both factors counsel in favor of Sanchez's requested sentence. This is Sanchez's first meaningful experience in the criminal justice system, and because Sanchez has never served jail time before this offense, even a short sentence would be longer than any previously imposed on him.

  F. *Defendant's Need for Ongoing Medical Care Counsels in Favor of the Requested Sentence.*

Finally, Section 3553(a) requires the Court to consider the need "to provide the defendant with needed educational or vocational training, medical care…in the most effective manner." 18 U.S.C. 3553(a)(2)(D). As applicable here, Sanchez has ongoing medical issues relating to cataracts in his eyes. To date, he has gone through at least two cataract surgeries and is expected to require ongoing injections in his eyes under the care of an eye doctor due to a possible autoimmune disease. It is unlikely that such specialized care can be effectively provided within the Bureau of Prisons. This factor further counsels against a lengthy term of incarceration, which could imperil Sanchez's long-term vision.

## CONCLUSION

For the foregoing reasons, Sanchez respectfully requests that this Court grant his request for a downward variance and impose a sentence of time-served with an additional period of home confinement.

Dated: January 26, 2026.

Respectfully submitted,

**HOLLAND & HART LLP**

By: */s/ John C. Anderson*
John C. Anderson
110 N. Guadalupe, Suite 1
Santa Fe, New Mexico  87501
TEL: (505) 988-4421
jcanderson@hollandhart.com

**ATTORNEY FOR DEFENDANT
BRIAN SANCHEZ**

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2026, I filed the foregoing using the CM/ECF system, which caused electronic service to be made as follows:

AUSA Elaine Ramirez - elaine.ramirez@usdoj.gov

AUSA Blake Nichols - blake.nichols@usdoj.gov

AUSA Raquel Ruiz Velez - raquel.ruiz.velez@usdoj.gov

Ofc. Andrea Maestas - andrea_maestas@nmp.uscourts.gov

*/s/ John C. Anderson*
John C. Anderson