FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
AUG 2 5 2026
ERIK PALTROW
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>**DAVID ALTAMIRANO-LOPEZ,**<br>**a.k.a. "Yogi,"**<br><br>Defendant. | **Cr. No. 25-0879 JMC** |

**PLEA AGREEMENT**

Pursuant to Rule 11, Fed. R. Crim. P., the parties notify the Court of the following agreement between the United States of America, for the District of New Mexico, and the Defendant, DAVID ALTAMIRANO-LOPEZ, with the advice and counsel of his attorney, CORI HARBOUR, Esq. This agreement is limited to the United States Attorney's Office for the District of New Mexico and does not bind any other federal, state, or local agencies or prosecuting authorities.

**REPRESENTATION BY COUNSEL**

1. The Defendant understands the Defendant's right to be represented by an attorney and is so represented. The Defendant has thoroughly reviewed all aspects of this case with the Defendant's attorney and is fully satisfied with that attorney's legal representation.

**RIGHTS OF THE DEFENDANT**

2. The Defendant further understands the Defendant's rights:

a. to plead not guilty, or having already so pleaded, to persist in that plea;

b. to have a trial by jury; and

c. at a trial:

i. to confront and cross-examine adverse witnesses,

ii. to be protected from compelled self-incrimination,

iii. to testify and present evidence on the Defendant's own behalf, and

iv. to compel the attendance of witnesses for the defense.

**WAIVER OF RIGHTS AND PLEA OF GUILTY**

The Defendant agrees to waive these rights and to plead guilty to Counts 2, and 22 through 28 of the second superseding indictment, charging violations of 21 U.S.C. 846, that being conspiracy to distribute a controlled substance, and possess with intent to distribute 400 grams and more of fentanyl, 500 grams and more of methamphetamine, 1 kilogram and more of heroin, 500 grams and more of cocaine, and a quantity of cocaine; charging in counts 22, 23 and 24, violations of 21 U.S.C. §§841(a)(1) and (b)(1)(A), that being possession with intent to distribute 400 grams and more of fentanyl; charging in Count 25, a violation of 21 U.S.C. §§841(a)(1) and (b)(1)(A), that being possession with intent to distribute of 500 grams and more of methamphetamine; charging in Count 26, a violation of 21 U.S.C. §§841(a)(1) and (b)(1)(A), that being possession with intent to distribute 1 kilogram of heroin; charging in Count 27, a violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B), that being possession with intent to distribute 500 grams and more of cocaine; and charging in Count 28, a violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C), that being possession with intent to distribute a quantity of a cocaine. .

**SENTENCING**

3. The Defendant understands that the minimum and maximum penalties provided by law for these offenses are:

Count 2, conspiracy to distribute and possess with intent to distribute 400 grams and more of fentanyl, 500 grams and more of methamphetamine, 1 kilogram and more of heroin, 500 grams and more of cocaine, and a quantity of cocaine.

a. imprisonment for a period of not less than ten years and not more than life;

b. a fine not to exceed $10,000,000.00;

c. a term of supervised release of not less than five years and not more than life to follow any term of imprisonment. (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked — even on the last day of the term — and the Defendant could then be returned to another period of incarceration and a new term of supervised release.);

d. a mandatory special penalty assessment of $100.00; and

e. restitution as may be ordered by the Court.

Counts 22, 23, and 24, possession with intent to distribute 400 grams and more of fentanyl.

a. imprisonment for a period of not less than ten years and not more than life;

b. a fine not to exceed $10,000,000.00;

c. a term of supervised release of not less than five years and not more than life to follow any term of imprisonment. (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked — even on the last day of the term — and the Defendant could then be returned to another period of incarceration and a new term of supervised release.);

d. a mandatory special penalty assessment of $100.00; and

e. restitution as may be ordered by the Court.

Count 25, possession with intent to distribute 500 grams and more of methamphetamine.

a. imprisonment for a period of not less than ten years and not more than life;

b. a fine not to exceed $10,000,000.00;

c. a term of supervised release of not less than five years and not more than life to follow any term of imprisonment. (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked — even on the last day of the term — and the Defendant could then be returned to another period of incarceration and a new term of supervised release.);

d. a mandatory special penalty assessment of $100.00; and

e. restitution as may be ordered by the Court.

Count 26, possession with intent to distribute of 1 kilogram and more of heroin.

a. imprisonment for a period of not less than ten years and not more than life;

b. a fine not to exceed $10,000,000.00;

c. a term of supervised release of not less than five years and not more than life to follow any term of imprisonment. (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked — even on the last day of the term — and the Defendant could then be returned to another period of incarceration and a new term of supervised release.);

d. a mandatory special penalty assessment of $100.00; and

e. restitution as may be ordered by the Court.

Count 27, possession with intent to distribute 500 grams and more of cocaine.

a. imprisonment for a period of not less than five years and not more than 40 years;

b. a fine not to exceed $5,000,000.00;

c. a term of supervised release of not less than four years and not more than life to follow any term of imprisonment. (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked — even on the last day of the term — and the Defendant could then be returned to another period of incarceration and a new term of supervised release.);

d. a mandatory special penalty assessment of $100.00; and

e. restitution as may be ordered by the Court.

Count 28, possession with intent to distribute a quantity of cocaine.

a. imprisonment for a period of not more than 20 years;

b. a fine not to exceed $1,000,000.00;

c. a term of supervised release of not less than three years and not more than life to follow any term of imprisonment. (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked — even on the last day of the term — and the Defendant could then be returned to another period of incarceration and a new term of supervised release.);

d. a mandatory special penalty assessment of $100.00; and

e. restitution as may be ordered by the Court.

4. The parties recognize that the federal sentencing guidelines are advisory and that the Court is required to consider them in determining the sentence it imposes. The Defendant further recognizes that while the Defendant's attorney may have made a prediction or estimate of the sentence that the Court may impose, the Defendant understands that the Court is not bound by any such estimate or prediction.

**ELEMENTS OF THE OFFENSE**

5. If this matter proceeded to trial, the Defendant understands that the United States would be required to prove, beyond a reasonable doubt, the following elements for violations of the charges listed below:

Count 2: 21 U.S.C. § 846, that being conspiracy to distribute and possess with intent to distribute 400 grams and more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2- phenylethyl)-4-piperidinyl] propanamide); 500 grams and more of methamphetamine; 1 kilogram and more of heroin; 500 grams and more of cocaine, and a quantity of cocaine:

*First*: the defendant agreed with at least one other person to violate federal drug laws described in Counts 2, 22, 23, 24, 25, 26, 27, and 28;

*Second*: the defendant knew the essential objectives of the conspiracy;

*Third*: the defendant knowingly and voluntarily involved himself in the conspiracy;

*Fourth*: there was interdependence among the members of the conspiracy; and

*Fifth*: the conspiracy involved 400 grams and more of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] 6ropenamide); 500 grams and more of methamphetamine; 1 kilogram and more of heroin; 500 grams and more of cocaine, and a quantity of cocaine.

Counts 22, 23, 24, 25, and 26; 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), that being possession with intent to distribute 400 grams and more of a mixture and substance containing a detectable amount of fentanyl, (count 25) 500 grams and more of methamphetamine, (count 26) 1kilogram and more of heroin.

*First*: the defendant knowingly or intentionally possessed the controlled substance(s) as charged;

*Second*: the defendant possessed the controlled substance with the intent to distribute it;

*Third*: the substance was in fact, 400 grams and more of fentanyl, 500 grams and more of methamphetamine, and 1 kilogram and more of heroin.

Fentanyl, methamphetamine, and heroin are controlled substances within the meaning of the law.

Count 27; 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), that being possession with intent to distribute 500 grams and more of cocaine.

*First*: the defendant knowingly or intentionally possessed the controlled substance(s) as charged;

*Second*: the defendant possessed the controlled substance with the intent to distribute it;

*Third*: the substance was in fact, 500 grams and more of cocaine.

Cocaine is a controlled substance within the meaning of the law.

Count 28; 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), that being possession with intent to distribute a quantity of cocaine.

*First*: the defendant knowingly or intentionally possessed the controlled substance(s) as charged;

*Second*: the defendant possessed the controlled substance with the intent to distribute it;

*Third*: the substance was in fact, a quantity of cocaine.

Cocaine is a controlled substance within the meaning of the law.

## DEFENDANT'S ADMISSION OF FACTS

6. By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offense(s) to which I am pleading guilty. I recognize and accept responsibility for my criminal conduct. Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offense(s) to which I am pleading guilty beyond a reasonable doubt, including any facts alleged in the second superseding indictment that increase the statutory minimum or maximum penalties. I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

> **I, David Altamirano-Lopez, a.k.a. "Yogi," admit that beginning on or about June 1, 2024 (although I did not join until later), and continuing to on or about April 28, 2025, I was part of a large drug-trafficking conspiracy with several coconspirators in different locations in the southwestern United States, to include New Mexico, Colorado, Arizona, Utah and Oregon.**
>
> **I was a driver/courier, and I was housed with others in Airbnb rentals paid for by other coconspirators. I and other drivers/couriers picked up loads of illegal narcotics,** including fentanyl, methamphetamine, heroin, and cocaine, **for transport to various cities throughout the southwest, and we all received instructions via telephone from the source of supply and other coconspirators regarding daily narcotics deliveries. This information included the type and quantity of drug(s) and the addresses to make the deliveries. I and other driver/couriers would then obtain the type and quantity of drug(s) ordered and would deliver to the addresses provided, in exchange for U.S. currency. I and other drivers/couriers often**

**maintained ledgers and used emojis to keep track of the drug inventory, and the U.S. currency collected. I and other drivers/couriers were paid from the drug proceeds.**

**As a driver/courier, I knew of several locations in Albuquerque where vehicles and illegal narcotics,** including fentanyl, methamphetamine, heroin, and cocaine, **were stored. A Chevy Silverado that remained parked in the parking lot of an apartment complex was also accessible as storage for illegal narcotics, making the narcotics more easily available than those in storage units. I knew the location of the storage units but never entered the storage units. I did, however, see and have access to the narcotics that came out of the storage units.**

**I admit that on March 13, 2025, I drove the gold Volkswagen Jetta I registered in my name to an apartment on Tramway Blvd., in Albuquerque, where I delivered 10,000 fentanyl pills in a dark colored backpack to codefendant A.**

**I admit that on April 7, 2025, I traveled with codefendant B to a residence in northeast Albuquerque, where we picked up codefendant C, who ordered 40,500 fentanyl pills. Codefendant C provided U.S. currency and we drove around in order to count and verify the amount of U.S. currency provided. We then drove to a location where I retrieved a blue and white backpack with Snoopy on it that contained the 40,500 fentanyl pills. We then dropped off codefendant C at the same northeast Albuquerque residence and provided the blue and white backpack with the fentanyl pills to codefendant C.**

**I admit that the illegal narcotics,** including fentanyl, methamphetamine, heroin, and cocaine, **seized on April 28, 2025, from the Chevy Silverado, and two storage units in Albuquerque (Juan Tabo and Unser Blvd.) were known to me and were made available to me upon removal from the storage units. I further admit that I am a speaker over several of the intercepted lines and I am**

**referred to as "Yogi." I also admit that I was paid a weekly salary to deliver narcotics, which I did daily. In addition, I was provided the cost of crossing into the United States and received a wire remittance from a codefendant to assist with expenses associated with crossing. I was also provided my housing, meals, a phone, two vehicles registered and insured in my name (a Honda Civic and a Volkswagen Jetta), gasoline, and other expenses associated with my job.**

7. By signing this agreement, the Defendant admits that there is a factual basis for each element of the crime(s) to which the Defendant is pleading guilty and agrees to affirm the facts set forth above during the plea colloquy. The Defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level.

**RECOMMENDATIONS**

8. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend as follows:

a. At least 1,741.5 grams of cocaine, 1,884.2 actual grams of methamphetamine, 2,205.2 grams of heroin, 6,383.61 grams of fentanyl powder, and 2,576,300 fentanyl pills are attributable to the Defendant. Accordingly, the parties agree that the Defendant's base offense level under the sentencing guidelines is 38, pursuant to U.S.S.G. § 2D1.1(c)(1).

b. As of the date of this agreement, the Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. Consequently, pursuant to U.S.S.G. § 3E1.1(a), so long as the Defendant continues to accept responsibility for the

Defendant's criminal conduct, the Defendant is entitled to a reduction of two levels from the base offense level as calculated under the sentencing guidelines, and if applicable, a reduction of an additional offense level pursuant to U.S.S.G. § 3E1.1(b). This reduction is contingent upon the Defendant personally providing to the United States Probation Officer who prepares the presentence report in this case an appropriate oral or written statement in which the Defendant clearly establishes the Defendant's entitlement to this reduction. Further, the United States is free to withdraw this recommendation if the Defendant engages in any conduct that is inconsistent with acceptance of responsibility between the date of this agreement and the sentencing hearing. Such conduct would include committing additional crimes, failing to appear in Court as required, and/or failing to obey any conditions of release that the Court may set.

c. The Defendant understands that the above recommendations are not binding on the Court and that whether the Court accepts these recommendations is a matter solely within the discretion of the Court after it has reviewed the presentence report. Further, the Defendant understands that the Court may choose to vary from the advisory guideline sentence. If the Court does not accept any one or more of the above recommendations and reaches an advisory guideline sentence different than expected by the Defendant, or if the Court varies from the advisory guideline range, the Defendant will not seek to withdraw the Defendant's plea of guilty. In other words, regardless of any of

the parties' recommendations, the Defendant's final sentence is solely within the discretion of the Court.

9. Apart from the recommendations set forth in this plea agreement, the United States and the Defendant reserve their rights to assert any position or argument with respect to the sentence to be imposed, including but not limited to the applicability of particular sentencing guidelines, adjustments under the guidelines, departures or variances from the guidelines, and the application of factors in 18 U.S.C. § 3553(a).

10. Regardless of any other provision in this agreement, the United States reserves the right to provide to the United States Pretrial Services and Probation Office and to the Court any information the United States believes may be helpful to the Court, including but not limited to information about the recommendations contained in this agreement and any relevant conduct under U.S.S.G. § 1B1.3.

**DEFENDANT'S ADDITIONAL AGREEMENT**

11. The Defendant understands the Defendant's obligation to provide the United States Pretrial Services and Probation Office with truthful, accurate, and complete information. The Defendant represents that the Defendant has complied with and will continue to comply with this obligation.

12. The Defendant agrees that any financial records and information provided by the Defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

13. The Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be

admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

14. By signing this plea agreement, the Defendant waives the right to withdraw the Defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d) unless (1) the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5) or (2) the Defendant can show a fair and just reason as those terms are used in Rule 11(d)(2)(B) for requesting the withdrawal. Furthermore, the Defendant understands that if the court rejects the plea agreement, whether or not the Defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and the Defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

15. The Defendant will not willfully fail to appear for any court appearance in this matter, nor willfully fail to surrender as ordered for service of any sentence.

16. The Defendant agrees not to engage in conduct that would constitute a new crime. Offenses that would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this paragraph's agreement.

17. Defendant agrees not to engage in conduct that would constitute obstructing or impeding the administration of justice under U.S.S.G. § 3C1.1.

**FORFEITURE**

18. The Defendant agrees to forfeit, and hereby forfeits, whatever interest the Defendant may have in any asset derived from or used in the commission of the offense(s) in this case.

19. The Defendant voluntarily and immediately agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following assets and properties:

a. **$215,744.00 in U.S. currency**

20. The Defendant consents to the prompt entry of a preliminary order of forfeiture and entry of a final order of forfeiture, pursuant to Fed. R. Crim. P. 32.2, without further notice to the Defendant. The Defendant also agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to execution of any documents necessary to transfer the Defendant's interest in the above-described property to the United States.

21. The Defendant agrees to waive the right to notice of any forfeiture proceeding involving the above-described property.

22. The Defendant knowingly and voluntarily waives the right to a jury trial on the forfeiture of the above-described property. The Defendant knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of said property in any proceeding. The Defendant agrees to waive any jeopardy defense or claim of double jeopardy, whether constitutional or statutory, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of said property by the United States or any State or its subdivisions.

## IMMIGRATION REMOVAL AND OTHER IMMIGRATION CONSEQUENCES

## CONSENT TO REMOVAL

23. The Defendant consents to removal from the United States following the completion of the Defendant's sentence. The Defendant further agrees to waive rights relating to any and all forms of relief from removal or exclusion, to abandon any pending applications for such relief, and to cooperate with the Department of Homeland Security during removal proceedings.

## WAIVER OF APPEAL AND POST-CONVICTION RIGHTS

24. The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence within or below the advisory guideline range as determined by the Court, as well as any order of restitution entered by the Court. This waiver extends to any challenge to the manner in which the sentence was determined or imposed, including the district court's authority to make findings supporting the sentence.

25. The Defendant also waives the right to appeal any sentence imposed below or within the guideline range upon a revocation of supervised release in this cause number but may nonetheless appeal the determination of the revocation guideline range.

26. The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c) where such denial rests upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a).

27. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

**GOVERNMENT'S ADDITIONAL AGREEMENT**

28. Provided that the Defendant fulfills the Defendant's obligations as set out above, the United States agrees that:

a. Following sentencing, the United States will move to dismiss Count 1 of the second superseding indictment.

b. The United States will not bring additional criminal charges against the Defendant arising out of the facts forming the basis of the present second superseding indictment.

**VOLUNTARY PLEA**

29. The Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement and any addenda). There have been no promises from anyone as to what sentence the Court will impose. The Defendant also represents that the Defendant is pleading guilty because the Defendant is in fact guilty.

**VIOLATION OF PLEA AGREEMENT**

30. The Defendant agrees that if the Court finds by a preponderance of the evidence that the Defendant has violated any provision of this agreement, the United States will be released from its obligations under the agreement. If the Defendant has pleaded guilty to any lesser-included offense(s), the Defendant's violation of this plea agreement will result in reinstatement of the greater offense(s). The Defendant waives any claim that the Defendant's

guilty plea under the rejected agreement bars prosecution of any additional offenses on double-jeopardy grounds.

31. The Defendant further agrees that in the event the Court finds that Defendant has breached this plea agreement, thus releasing the United States of its obligations under the agreement, such events do not constitute a fair and just reason under Rule 11(d)(2)(B) for withdrawing the guilty plea(s) entered pursuant to this agreement.

32. Following the Court's finding of a breach of this agreement by the Defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, the Defendant waives any defense to that charge or charges based on the lapse of time between the entry of this agreement and the Court's finding of a breach by the Defendant.

## SPECIAL ASSESSMENT

33. At the time of sentencing, the Defendant will tender to the United States District Court, District of New Mexico, 333 Lomas Blvd. NW, Suite 270, Albuquerque, New Mexico 87102, a money order or certified check payable to the order of the **United States District Court** in the amount of $800.00 in payment of the special penalty assessment described above.

## ENTIRETY OF AGREEMENT

34. This document and any addenda are a complete statement of the agreement in this case and may not be altered unless done so in writing and signed by all parties. This agreement is effective upon signature by the Defendant and an Assistant United States Attorney.

AGREED TO AND SIGNED this 25th day of August, 2026.

TODD BLANCHE
Deputy Attorney General
RYAN ELLISON
First Assistant United States Attorney

ELAINE Y. RAMÍREZ
RAQUEL RUIZ-VELEZ
BLAKE NICHOLS
DAVID HIRSCH
Assistant United States Attorneys
201 Third Street, Suite 900
Albuquerque, New Mexico 87102
(505) 346-7274

I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of my client's rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement. In addition, I have explained to my client the elements to each offense to which she/he is pleading guilty. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

CORI A. HARBOUR
Attorney for the Defendant

This agreement has been read to me in a language I understand. I have carefully discussed every part of this agreement with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement.

DAVID ALTAMIRANO-LOPEZ
Defendant